JANE M. MURRAY
17200 Newhope St., 328B
Fountain Valley, CA 92708
Telephone: (714) 800-0419
E-mail: jmurrayrose@hotmail.com
*Pro se / self-represented plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE M. MURRAY,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MIKE PARSONS, a Police Officer with the City of Fountain Valley Police Department, in his individual capacity; KEVIN CHILDES, in his official capacity as the Chief of the City of Fountain Valley Police Department; and CITY OF FOUNTAIN VALLEY, a California municipal entity.<br><br>　　　　　Defendants. | **Case No. SACV19-00768 GV (JC)**<br>Magistrate Judge Jacqueline Chooljian<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>[No hearing scheduled] |

## OPPOSITION TO MOTION TO DISMISS

Plaintiff hereby opposes and respectfully submits[1] this memorandum in opposition to defendant CITY OF FOUNTAIN VALLEY's Motion to Dismiss the First Amended Complaint.

---

[1] (Defendant's motion was served on plaintiff *by mail* 9/28/2020, so the motion date pursuant to Local Rule 6-1 apparently should have been 31 days later, with opposing papers due 21 days before that date, or 10/8/2020, nevertheless this is being completed as soon as possible to meet the scheduling order.)

1

# TABLE OF CONTENTS

I. ARGUMENT..................................................................................................4

    A. Plaintiff's complaint should not be dismissed without a trial on the merits because its causes of action are authorized by federal law........................4

    B. Sufficient facts were alleged for First Cause of Action........................6

    C. Sufficient facts were alleged for Second Cause of Action...................8

    D. Sufficient facts were alleged for Third Cause of Action.....................9

    E. Sufficient facts were alleged for Fourth Cause of Action..................10

    F. Sufficient facts were alleged for Fifth Cause of Action.....................13

II. CONCLUSION............................................................................................14

# TABLE OF AUTHORITIES

*Cases.*

Ashcroft v. Iqbal, 556 U.S. 662 (2009)..................................................................5

Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233 (1863)...........................................10

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).........................................5

Brown v. Lynch, 831 F.3d 1146, 1152 (9th Cir. 2016);........................................5

Carey v. Piphus, 435 U.S. 247, 259 (1978)........................................................13

Castro v. Cty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016).............................5

Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995);.................................6

City of Canton, Ohio v. Harris, 489 U.S. 378, 388–91 (1989)............................5

City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)..................................5

Daniels v. Williams, 474 U.S. 327, 329–30 (1986);............................................8

Fuentes v. Shevin, 407 U.S. 67, 80–81 (1972)...................................................11

Fuentes v. Shevin, 407 U.S. 67, 81 (1972).........................................................13

Garmon v. Cty. of Los Angeles, 828 F.3d 837, 846 (9th Cir. 2016)....................5

Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986)............................4

Grimm v. City of Portland, Court of Appeals, 9th Circuit (2020).....................10

Hafer v. Melo, 502 U.S. 21, 31 (1991);................................................................4

Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)..................................................6

Kirkpatrick v. Cty. of Washoe, 843 F.3d 784, 793 (9th Cir. 2016)....................5

Lytle v. Carl, 382 F.3d 978, 983 (9th Cir. 2004)..................................................... 5

Maddox v. City of Los Angeles, 792 F.2d 1408, 1413–14 (9th Cir. 1986)........ 8

Mathews v. Eldridge, 424 U.S. 319, 333 (1976). ................................................10

McRorie v. Shimoda, 795 F.2d 780, 784 (9th Cir. 1986).....................................5

Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016)...............................4

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)....................................4

Mullane v. Central Hanover Bank & Trust Co. 339 US 306, 319 (1950). .........12

Navarro v. Block, 72 F.3d 712, 714–15 (9th Cir. 1996)........................................5

Rizzo v. Dawson, 778 F.2d 527, 529–30 (9th Cir. 1985).....................................6

Rodriguez vs. United States, 135 S. Ct. 1609 (2015)............................................9

Scofield v. Hillsborough, 862 F.2d 759 (9th Cir. 1988).....................................11

Trevino v. Gates, 99 F.3d 911, 920–21 (9th Cir. 1996).........................................5

United States v. Classic, 313 U.S. 299, 326 (1941)................................................4

Waggy v. Spokane Cty. Wash., 594 F.3d 707, 713 (9th Cir. 2010)....................5

Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1092–93 (9th Cir. 1998)...... 8

West v. Atkins, 487 U.S. 42, 49 (1988)....................................................................4

Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) ................................6

*Statutes*

42 U.S.C. section 1983.................................................................................................4

Vehicle Code section 22852.....................................................................................11

Vehicle Code section 4456 ........................................................................................9

# I. ARGUMENT

## A. Plaintiff's complaint should not be dismissed without a trial on the merits because its causes of action are authorized by federal law.

Federal statute 42 U.S.C. section 1983 authorizes the plaintiff to file her complaint as a means to vindicate her federal rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. section 1983.

In the complaint such a plaintiff is simply required to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

Officials sued in their personal capacity are persons for purposes of section 1983. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (explaining the Eleventh Amendment does not bar claims for damages against state officials in their personal capacities). A defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941).

Municipalities also, such as defendant CITY OF FOUNTAIN VALLEY ("City"), are included as a "person" under the statute: "[M]unicipalities and other local government units ... [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). They are liable when "the alleged constitutional deprivation was the product of a policy or custom of the local

governmental unit." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016). The offending city policy is one that "reflects deliberate indifference to the constitutional rights of its inhabitants." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). This includes a policy of inaction. *Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016); *Waggy v. Spokane Cty. Wash.*, 594 F.3d 707, 713 (9th Cir. 2010). A single instance can suffice: "municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority" *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004). This includes ratification of a subordinate's decision by the official with final decision making authority. *Trevino v. Gates*, 99 F.3d 911, 920–21 (9th Cir. 1996). The acquiescence of officials who fail to discipline subordinates for single instances of unconstitutional conduct may be interpreted as a policy. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986). Even if there is not an explicit policy, a plaintiff may establish that a 'custom' exists - a well-settled practice by the municipality - that nevertheless gives rise to the constitutional violation. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). However, alleging that a random act occurred or that single instance of misconduct happened is not sufficient to establish that there exists a municipal custom. *Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir. 1996). A city's liability can also arise from its failure to properly train its employees to respect the rights of the persons with whom they come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–91 (1989); *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016).

      There is no heightened pleading standard with respect to pleading policy or custom, however it must be more than a bare allegation or inference, which used to be held sufficient before it was raised to a "plausibility" standard by the holdings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Nevertheless it has been held that *Twombly* and *Iqbal* "did not alter the courts' treatment of pro se filings," for, "[w]hile the standard is higher [under Iqbal], our obligation remains, where the petitioner is pro se, particularly in civil rights

cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). See also, *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (stating that pro se complaints could be dismissed for failure to state a claim only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

Also, "A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Rizzo v. Dawson*, 778 F.2d 527, 529–30 (9th Cir. 1985).

### B. Sufficient facts were alleged for First Cause of Action.

The first cause of action alleges that defendant Parsons is personally liable for unlawfully stopping and detain the plaintiff under color of law while acting as a police officer for the Fountain Valley Police Department (FAC, paragraphs 14-16, 23).

It is alleged that the officer knew that no parking violation had actually occurred and therefore he had no grounds legal justification for stopping the vehicle. Further, even if he was mistaken about the parking violation, he chose not to issue a ticket while the car was parked, but after having passed Ms Murray at the 7/11 store, improperly waited until she was in motion and then used the alleged parking violation as his supposed pretext for pulling her over - even though this supposed violation was no longer occurring because she driven off (Ibid, 14).

The first, second, and third causes of action are against Parson as an individual defendant in their personal capacity. The causes of action are not against the City, yet the lawyers for the city have moved in their motion to dismiss to have these causes of action dismissed. Defendant City has not explained why it is moving

///

to dismiss causes of action that pertain to Parsons only, yet they have not acknowledged that he has been served and have not answered for him.

Regardless, Defendant's motion cites no authority for the alleged right of police officers to prey upon alleged parking violators, waiting until the return and set their vehicles are in motion, and then proffer the alleged excuse of a supposed parking violation mistake as the reason for pulling them over. The complaint alleges that the real reason why Parsons pulled the plaintiff over was that he had animosity against her when they passed each other at the 7/11, he took a dislike to the vagabond appearance of her truck laden down with personal belongings, he saw plaintiff as a target that he could easily bully and harass, and he had a desire to make her upset by oppressively finding an excuse to tow away her vehicle. (Ib., 23). The plausibility of these factual allegations is not only the officer's words and conduct, but also surmised from his withholding of the initial minutes of the stop's tape recording, hiding from the plaintiff what he may have said to dispatch, or to himself or others, prior to, and while, stopping the plaintiff. (Ib., 15).

Defendant's Motion to Dismiss admits that a police officer may not use a pretext to pull a person over when his true intention is unlawfully harassment, but claims that the officer is excused because he only made legal mistakes. (Motion page 4-5). However, the FAC alleges that officer Parsons' real reason for executing the stop was that he was "irritated" by her and the "the unkempt appearance of her used truck that was heavily laden down with personal belongings" (FAC, pg. 2), and that his personal animosity that made him "hostile" (FAC, pg 4). The FAC alleges several facts to support the allegation that officer Parsons was motivated simply by the illegal desire to harrass and bully, and that his allegation of a parking violation was a mere pretext. For example the FAC mentioned his hostile demeanor, his noting of the truck's appearance, his deleting of the tape recording, his refusal to listen to his fellow officers, his prediction that he was going to make Ms Murray upset, his refusal to speak with the used car salesman, his calling of the salesman "shady", his detaining for nearly an hour, his intentional fabrication of an untrue

reason to tow the truck, his waiting until Ms Murray was in motion before trying to cite her for a parking violation. Therefore there is a triable issue of whether the allegations in the complaint of a pretext are true, or whether, as the city alleges, a mere mistake of law occurred. These factual issues should be determined at trial, not dismissed at the pleading stage.

Defenant's Motion incorrectly asserts as "most significant" that the FAC "admits that her vehicle registration was expired." Motion, page 5, lines 13-17. This is incorrect. The FAC states that the registration was actually valid because of the 90 day temporary notice. FAC, paragraph 19. The City's motion seeks to imagine reasons that would excuse officer Parsons for what the impermissible conduct alleged in the complaint. "[Section] 1983 ... contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams*, 474 U.S. 327, 329–30 (1986); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1413–14 (9th Cir. 1986).

**C. Sufficient facts were alleged for Second Cause of Action.**

"Defendant's Motion to Dismiss claims the second cause of action is duplicative of the first cause of action because they both "arise from the same seizure" therefore they "describe one seizure." Motion page 4, lines 2-6. This is not true since a 1983 actions depend on the different substantive rights that were violated. *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1092–93 (9th Cir. 1998). The first cause of action identifies the initial stop itself as violating the 4th Amendment, and the second cause of action identifies length of the stop as violating the 4th Amendment. Both violate similar substantive rights, including freedom from unlawful seize and violation of the freedom to travel, however the second one is predicated upon the excessive time involved, even if the first cause of action is excused.

Defendant's motion does not offer any argument that would excuse officer Parsons' decision to keep plaintiff detained for such a long time while he spent it -
8
OPPOSITION TO MOTION TO DISMISS

not investing facts - but engaged in arguing with his fellow officers over what the law says and trying to figure out an excuse he could invent to tow the vehicle, despite knowing the law was against him. "A seizure for a traffic violation justifies a police investigation of that violation" – not more — and "authority for the seizure . . . ends when tasks tied to the traffic infraction are – or reasonably should have been— completed..." *Rodriguez vs. United States*, 135 S. Ct. 1609 (2015).

### D. Sufficient facts were alleged for Third Cause of Action.

The third cause of action complains of Parsons' decision to contrive a fictitious excuse for towing plaintiff's vehicle contrary to the law by ignoring the plaintiff's temporary registration documents.

Defendant's Motion to Dismiss makes the argument that that part of Vehicle Code section 4456 (c) that allows an owner to operate her newly purchased vehicle for "A 90-day period, commencing with the date of sale of the vehicle" should be ignore or nullified by subsection (a) that requires the used car dealer to turn in certain paperwork to the DMV within 30 days. Defendant asks the court to ignore the right granted to the used car purchaser - a 90 day temporary window to wait for the registration process between the dealer and the DMV to be complete - to elapse after only 30 days. This is wrong because the 90 days that the code gives the purchaser is independent of whether or not the dealer was able to meet his 30 days deadline. The scheme is set up to allow ample time for the purchaser to continue to operate the newly purchased vehicle while the used car dealer and the DMV go about their task of sorting out between them their respective paperwork. Penalty for the dealer failing to meet its 30 day deadline applies against the dealer only, and not to the purchaser: "Penalties due for noncompliance with this paragraph shall be paid by the dealer or lessor-retailer. The dealer or lessor-retailer shall not charge the purchaser for the penalties." Vehicle Code sec. 4456 (a)(2) [from 2016].

Regardless, the defendant is asking the court to speculate on these matters which are not contained within the complaint; to assume whether the dealer

complied with its timeline, to assume that if he did whether or not it would have been immediately reflected in the DMV's database. One cannot tell whether the City is arguing that the registration had been completed, and therefore the 90 day temporary notice was superceded by actual registration, or whether the City thinks the dealer failed to turn in his paperwork within the 30 days, which, even if true, would have no bearing on the purchaser's rights to a temporary 90 day registration. The motion raises a red herring. The FAC itself does not say what the dealer did or did not do within the 30 days.

### E. Sufficient facts were alleged for Fourth Cause of Action.

Plaintiff's fourth cause of action is alleged against the Chief Childes of the Fountain Valley Police Department in his official capacity for the policy and custom that violate the due process right of denying vehicle purchasers a post-tow review hearing if their registration has not yet been processed by the DMV even if they have temporary registration under the 90 day report of sale document that proves that they recently purchased the vehicle and are awaiting final registration. FAC paragraph 26.

"[S]ome form of hearing is required before an individual is finally deprived of a property [or liberty] interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Parties whose rights are to be affected are entitled to be heard." *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 233 (1863).

Having one's car towed away by the government can be very traumatizing, as the court in *Grimm v. City of Portland*, Court of Appeals, 9th Circuit (2020), recently explained:

> "*Clement* explained that "having one's car towed, even one that's not operational, imposes significant costs and burdens on the car's owner." Id. at 1094. And as this Court has repeatedly recognized, "[t]he uninterrupted use of one's vehicle is a significant and substantial private interest." *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1238 (9th Cir. 2009) (quoting *Scofield v. City of Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988)). Towing practices "disproportionately prejudice[e] low-income" populations as towing can "permanently

depriv[e] low-income individuals of their vehicles (which often serve as their sole source of income or even their home)." Brief of the San Francisco Coalition On Homelessness, The Lawyers' Committee For Civil Rights Of The SF Bay Area, and Bay Area Legal Aid as Amici Curiae, Dkt. No. 16 at 11-12. For such individuals, "municipal tow practices often create a `debt trap for the poor,'" id. at 16, because, without access to one's car, obtaining and maintaining economic security becomes problematic, id. at 11-18. *Clement* held that imposing the burdens associated with a towed car without providing notice "cannot be justified as a means of deterring illegal parking." 518 F.3d at 1094."

Defendant's Motion to Dismiss admits that procedural due process requires public entities to provide a meaningful opportunity for people to be heard before depriving them of their property, but it claims that recent vehicle purchasers whose transaction has not yet been fully processed by the DMV do not yet have official vehicle registration and therefore have no such entitlement, and may be deprived of their property interest without any hearing.

However, their position empowers the City's police department to arbitrarily annul a new purchaser's ownership rights without providing any hearing to them. It is a "basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment . . . ." *Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972).

Defendant asserts, however, that Ms. Murray "lacked standing" because the DMV computer database did not show her to be the registered owner of the vehicle and cites *Scofield v. Hillsborough*, 862 F.2d 759 (9th Cir. 1988) as approving Vehicle Code section 22852. However, subsection (a) of that statute requires: "shall provide the vehicle's registered and legal owners of record, or their agents, with the opportunity for a poststorage hearing to determine the validity of the storage." The defendant is claiming that only the legal owner of record in the DMV is entitled to notice, yet the statute includes the registered owners and their agents - described as

11
OPPOSITION TO MOTION TO DISMISS

distinct from the "legal owners of record". The *Scofield* decision stated, "Moreover, California Vehicle Code § 22852 provides that notice of the right to a post-towing hearing be given within forty-eight hours after a vehicle has been towed, and that such a hearing be held within forty-eight hours after a request for a hearing is made. Such procedures ensure that any erroneous deprivation of an owner's vehicle will be slight, and satisfies due process concerns." (Id.) So *Scofield* does not stand for the proposition that the government can pretend that recent vehicle purchasers who have bills of sale and evidence from the used car dealer have no property interest in their vehicles worthy of the basic protection afforded by post-tow review hearing.

"[a]n elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . with due regard for the practicalities and peculiarities of the case." *Mullane v. Central Hanover Bank & Trust Co.* 339 US 306, 319 (1950).

Ms Murray not only showed officer Parsons her 90 day registration, she also got the used car dealer on her phone and tried to have officer Parsons speak with him, but he refused (FAC, paragraph 19). Certainly the purpose of the post-towing hearing is so that people in exactly Ms. Murray's situation can present evidence that she is the true owner even though the DMV database has not yet been updated to reflect that fact. By refusing to provider her with this opportunity, the public entity is playing a game of catch 22 that enables it to, in effect, steal people's cars during the 90 day period, refusing to give them any opportunity to prove that they are true owners even though they just recently bought a vehicle and the DMV doesn't yet show the registration change. The required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a state proposes to deprive them of protected interests. *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). Even if defendant was correct in its decision to tow the vehicle, plaintiff still suffered a violation of her due process

rights when her opportunity to attempt to dispute it at an unbiased hearing was denied. *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

**F. Sufficient facts were alleged for Fifth Cause of Action.**

    Defendants argue that the City is not liable because the FAC only describes a single instance that happened to the plaintiff. Although plaintiff's complaint does arise from her single instance of suffering the loss of her liberty and vehicle on one occasion, she nevertheless alleges that it was pursuant to the City's fixed policies and prevailing customs that she did so. Defendant's motion to dismiss makes no attempt to deny the existence of the policy, and actually admits that it is its policy of not providing post-tow review hearings to those who recently purchased vehicles but do not yet show up in the DMV's computer database as registered owners:

> "the Plaintiff purchased the vehicle from a registered dealer on April 28, 2018 and the sale of vehicle was not properly registered within the time frame required, leaving her with no proof that she was the owner of the vehicle. Although, if true, this would be an unfortunate situation, it is nonetheless a situation of no fault to the City of Fountain Valley, as without proof of ownership the City has no duty to offer the Plaintiff a hearing and the Plaintiff has no standing for a due process claim."

Defendant's Motion (p. 10, lines 1-9).

    The only 'proof' acceptable to the city is the DMV's computerized list, and therefore it will not even grant the plaintiff an opportunity to present at a post-towing hearing any evidence of a recent purchase, including her purchase documents, the testimony of the used car dealer, and her 90 day temporary registration notice that was posted in the window of the towed vehicle window and (FAC, paragraphs 18, 19, 21, 25, 27, etc.).

    "Defendant's motion to dismiss admits that cities may be sued when their policies and customs violate constitutional rights, but claims that the violation that happened here is not a custom because the FAC only mentions it happening one time to the plaintiff. However, Defendant's motion admitted its official position regarding

auto purchasers who have 90 day registrations from their dealers before those transfers appear on the DMV database: they are considered non-owners who are not to be provided with post-tow hearing because they "lack standing". This is "unfortunate" says the Defendant's motion, but it is much more than that. It is a custom and policy that leaves people like the plaintiff robbed of the vehicles that they just purchased. Just because one incident is cited, does not mean this is not the policy of Defendant. FAC alleges that Ms. Murray spoke with three different people in different departments who confirmed the policy and she complained to the city that also ignored her. The plaintiff has identified therefore, even though in her single instance, that indeed she was deprived of her Constitutionally protected rights pursuant the City's policy and custom that they have unashamedly admitted in their motion to dismiss: The city and its police department do not believe, as a matter of policy, that people in plaintiff's position have any standing to contest the seize of the cars that they just bought before the purchase has been registered by the DMV. The city is responsible for its municipal police department and yet it has taken the official position in its motion to dismiss that people who buy autos can have them taken without compensation simply by ignoring the 90 day temporary registration and then refusing to let them have a hearing because they are not already listed in the DMV's computer database.

## II. CONCLUSION

For the foregoing reasons the First Amended Complaint adequately alleges facts, if proven, would establish that the defendants have violated, and continue to violate, the plaintiff's fundamental Constitutional rights. Therefore the motion to dismiss should be denied.

Respectfully submitted,

Date: October 6, 2020          /S/ JANE M. MURRAY

JANE M. MURRAY
*Pro se plaintiff*

JANE M. MURRAY
17200 Newhope St., 328B
Fountain Valley, CA 92708
Telephone: (714) 800-0419
E-mail: jmurrayrose@hotmail.com
*Pro se / self-represented plaintiff*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE M. MURRAY,<br>      Plaintiff,<br><br>vs.<br><br>MIKE PARSONS, et al.,<br>      Defendants. | Case No. SACV19-00768 GV (JC)<br>Magistrate Judge Jacqueline Chooljian<br><br>**CERTIFICATE OF SERVICE**<br><br>[FRCP, Rule 5] |

I am over the age of 18 and not a party to this case. My business address is 19744 Beach Blvd. #219, Huntington Beach, CA 92648.

A true and correct copy of the foregoing document entitled:

**"PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS"**

On Oct. 6, 2020, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows:

1. Clerk, U.S. District Court, U.S. Courthouse, 255 East Temple Street, Room 180 (Terrace Level), Los Angeles, CA 90012-1565.

2. Magistrate Judge Jacqueline Chooljian, Chambers' Copy, U.S. District Court, 255 East Temple Street, Room 180 (Terrace Level), Los Angeles, CA 90012-1565.

3. Mark Rutter, Esq.; Carpenter, Rothans & Dumont LLP, 500 South Grand Ave., 19th Floor, Los Angeles, CA 90071. (Attorneys for Defendant City of Fountain Valley)

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: <u>October 6, 2020</u>

*[signature]*

Matt McLaughlin

---

2

CERTIFICATE OF SERVICE

P

U.S. POSTA
$7
PM 1-D
92627 0
Date of sale
10/06/2
06 2
1148598
865501006182156

PRIORITY MAIL 1-DA

EXPECTED DELIVERY DAY: 10/08/20

JC

CO

SHIP
TO:

255 E TEMPLE ST
Los Angeles CA 90012-3332

USPS TRACKING® NUMBE

9505 5065 7901 0280 3339 46

*From:* Matt McLaughlin
19744 Beach Blvd. #219
Huntington Beach, CA

*To:* **Clerk, U.S. District Court**
**U.S. Courthouse**
**255 E Temple St., Rm 180 (Terrace)**
**Los Angeles, CA 90012-1565**

